BRIAN M. BOYNTON
Acting Assistant Attorney General, Civil Division
ARUN G. RAO
Deputy Assistant Attorney General
GUSTAV W. EYLER
Director, Consumer Protection Branch
LISA K. HSIAO
Assistant Director
ZACHARY L. COWAN
Trial Attorney
    Consumer Protection Branch
    U.S. Department of Justice
    P.O. Box 386
    Washington, DC 20044
    Telephone: (202) 598-7566 (Cowan)
    Email: Zachary.L.Cowan@usdoj.gov
Attorneys for Plaintiff
UNITED STATES OF AMERICA

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> ENVIRONMENTAL SAFETY INTERNATIONAL, INC., a New Jersey corporation, also d/b/a Environmental Products International, Inc., and EPI, <br><br> JOSEPH CARNEY, individually and as an officer of Environmental Safety International, Inc., <br><br> SEAN CARNEY, individually and as an officer of Environmental Safety International, Inc., and <br><br> RAYMOND CARNEY, individually, <br><br> Defendants. | Case No. 2:21-13350 <br><br> **COMPLAINT FOR PERMANENT INJUNCTION AND CIVIL PENALTIES** |

Plaintiff, the United States of America, located at 950 Pennsylvania Avenue, N.W., Washington, D.C., acting upon notification and authorization to the Attorney General by the Federal Trade Commission ("FTC"), pursuant to Section 16(a)(1) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 56(a)(1), for its Complaint against Defendants Environmental Safety International, Inc., also doing business as Environmental Products International, Inc., and EPI ("ESI"), with a principal place of business at 216 Anderson Avenue, Fairview, New Jersey 07022; Joseph Carney, residing at 20 Appletree Lane, Hillsdale, New Jersey 07642; Sean Carney, residing at 245 Wierimus Lane, Hillsdale, New Jersey 07642; and Raymond Carney, residing at 165 Mistletoe Court, Toms River, New Jersey 08753 (collectively, "the Defendants"), alleges:

1. Plaintiff brings this action under Sections 5(a), 5(m)(1)(A), 13(b), 16(a), and 19 of the FTC Act, 15 U.S.C. §§ 45(a), 45(m)(1)(A), 53(b), 56(a), 57b, and Section 6 of the Telemarketing and Consumer Fraud and Abuse Prevention Act (the "Telemarketing Act"), 15 U.S.C. § 6105, to obtain monetary civil penalties, a permanent injunction, and other equitable relief for the Defendants' acts or practices in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and in violation of the FTC's Telemarketing Sales Rule ("TSR"), as amended, 16 C.F.R. pt. 310.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1345.

3. Venue is proper in this District under 28 U.S.C. § 1391(b)(1), (b)(2), (c)(1), and (c)(2), and 15 U.S.C. § 53(b). The Defendants reside and transact business in this District.

**DEFENDANTS**

4.     Defendant ESI is a New Jersey corporation with its principal office or place of business at 216 Anderson Avenue, Fairview, New Jersey 07022.  ESI transacts or has transacted business in this District and throughout the United States.  Defendant ESI sells septic tank cleaning products under the brand name "Activator 1000" or "Activator 2000" to consumers who own a septic system or cesspool.  At all times relevant to this Complaint, acting alone or in concert with others, ESI has advertised, marketed, distributed, or sold septic tank cleaning products to consumers throughout the United States.

5.     Defendant Joseph Carney is the President of ESI and is ESI's co-owner.  Joseph Carney, along with his brother Sean, supervises and approves marketing activities conducted by Raymond Carney and Carbro Sales & Survey, L.L.C. ("Carbro").  He is actively involved in ESI's day-to-day operations, including speaking directly to customers to confirm their addresses for shipment.  He is the primary signatory to the bank account from which ESI transferred funds to pay for Carbro's expenses, including the means to deliver prerecorded telephone messages such as Voice over Internet Protocol ("VoIP") minutes and Carbro's predictive and automatic dialing equipment and software, further demonstrating his knowledge of Carbro's illegal calls.  During the past two decades, Joseph Carney served as ESI's President while ESI has been the subject of at least four federal and state government investigations involving the use of illegal telemarketing practices, including personally signing a stipulation on behalf of ESI to settle the action brought by the State of Wisconsin and unsuccessfully defending ESI against the Federal Communication Commission's action for delivering unsolicited prerecorded advertising messages.  Twice he was sued individually for engaging in illegal telemarketing practices, including the use of prerecorded messages to sell septic tank cleaning products.  At all times relevant to this Complaint, acting

alone or in concert with others, Joseph Carney has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of ESI and Carbro, including the acts and practices set forth in this Complaint.  Joseph Carney resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

6.      Defendant Sean Carney, the brother of Joseph Carney, is the Vice President of ESI and is ESI's other co-owner.  Sean Carney has been the Vice President of ESI for at least the last two decades.  In addition to approving, along with his brother Joseph Carney, marketing activities conducted by Raymond Carney and Carbro, Sean Carney was the secondary signatory to the bank account from which ESI transferred funds to pay for Carbro's expenses, including payroll, VoIP minutes, predictive and automatic dialing software and equipment, and postage, further demonstrating his knowledge of Carbro's illegal calls.  Sean Carney received invoices and a report from Carbro's VoIP provider, which showed hundreds of thousands of calls consisting of tens of thousands of minutes to United States-based telephone numbers.  During a July 2019 investigative hearing, Sean Carney, testifying on behalf of ESI, admitted that he understood that legal responsibility for ensuring compliance with the National Do Not Call Registry remains with ESI and Carbro.  Further, Sean Carney directed that letters be mailed to customers threatening to direct their purportedly delinquent accounts to a collection agency or legal department even though ESI never intended to send customer accounts to either a collections agency or legal department.  At all times relevant to this Complaint, acting alone or in concert with others, Sean Carney has formulated, directed, controlled, had the authority to control, or participated in the acts and practices of ESI and Carbro, including the acts and practices set forth in this Complaint.  Sean

Carney resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

7. Together, ESI, Joseph Carney, and Sean Carney shall be referred to as "the ESI Defendants."

8. Defendant Raymond Carney was the sole owner and head of Carbro, a New Jersey limited liability company that was dissolved on January 11, 2021. He is the younger brother of Defendants Joseph Carney and Sean Carney. At all times relevant to this Complaint, acting alone or in concert with others, Raymond Carney formulated, directed, controlled, had the authority to control, or participated in the acts and practices of Carbro, including the acts and practices set forth in this Complaint. Raymond Carney resides in this District and, in connection with the matters alleged herein, transacts or has transacted business in this District and throughout the United States.

**COMMON ENTERPRISE**

9. Defendant ESI and Carbro operated as a common enterprise while engaging in the deceptive and unlawful acts and practices alleged below. ESI and Carbro conducted these business practices through interrelated, family-owned companies that have common control and business functions. Since its founding in 2009, Carbro had only one customer—ESI. ESI paid Carbro's expenses, including but not limited to rent, VoIP minutes, predictive dialer equipment, payroll, and the health insurance and car payments of Raymond Carney and his wife. Further, ESI and Carbro shared branding, advertising, and website maintenance costs. ESI and Carbro communicated interchangeably with vendors regarding Carbro's bills and vendors did not distinguish between the two companies. ESI treated Carbro's employees and contractors as if they worked for ESI, including by reviewing their hours worked and terminating or threatening to

terminate employees. Because ESI and Carbro operated as a common enterprise, ESI is liable for Carbro's acts and practices alleged below.

## COMMERCE

10. At all times relevant to this Complaint, the Defendants have maintained a substantial course of trade or business in marketing goods or services via the telephone, in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## DEFENDANTS' BUSINESS ACTIVITIES

11. The Defendants are "seller[s]" and/or "telemarketer[s]" engaged in "telemarketing," and the Defendants have initiated, or have caused telemarketers to initiate, "outbound telephone call[s]" to consumers to induce the purchase of goods or services, as those terms are defined in the TSR, 16 C.F.R. § 310.2(x), (dd), (ff), and (gg).

12. In 2009, Defendant Raymond Carney established Carbro, after consultation with his brothers, Defendants Joseph and Sean Carney, to dial and call consumers to obtain new customers for ESI's Activator 1000 line of septic tank cleaning products. In order to achieve this singular goal, the Defendants and Carbro initiated or caused to be initiated over 45 million outbound telemarketing calls to consumers throughout the United States from January 1, 2018, to March 18, 2019. Of this total, over 31 million were to telephone numbers that had been listed on the National Do Not Call Registry for more than 30 days prior to the date of the calls (a "hit rate" of over 68%). In addition, from January 1, 2020, to December 7, 2020, the Defendants and Carbro initiated or caused to be initiated over 14.6 million calls of which over 6.7 million were to telephone numbers that had been listed on the National Do Not Call Registry for more than 30 days prior to the date of the calls (over 45.7% hit rate).

13. The ESI Defendants handled product fulfillment and payment collection from the new customers obtained through illegal telephone calls initiated by Carbro.

14. ESI was Carbro's only client. Through wire transfers and check deposits placed into Carbro's corporate bank accounts, ESI paid the expenses incurred by Carbro, including payroll, VoIP minutes, predictive and automatic dialer software and equipment, and postage. ESI also paid for the health insurance and car payments of Raymond Carney and his wife.

15. From at least 2016 to after the time of learning of the FTC investigation into their practices, the Defendants and Carbro advertised Activator 1000 by blasting millions of telephone calls that deliver unsolicited prerecorded telephone messages, or "robocalls," to consumers across the United States.

16. The Defendants' prerecorded message falsely claims that it is "not a sales call or solicitation," but purportedly invites septic tank and cesspool owners to receive free information on how to maintain their system and protect the environment:

> Hello, this is not a sales call or a solicitation. We're calling from an environmental company with information for all septic tank and cesspool owners. We would like to give you some free info on our environmentally safe, all natural septic tank cleaning product. The product is U.S.D.A. approved for safety and is fully guaranteed to eliminate the need for tank pump outs and prevent any costly repairs by maintaining your entire septic system or cesspool. If you'd like free information on how to maintain your system and protect the environment please press one. If you would like to be removed from our calling list, please press two.

17. Consumers who pressed "1" then heard a message that directed them to leave their name, telephone number, and mailing address to receive "free information."

18. The robocall message does not disclose the Defendants' identities, nor does the message state the actual purpose of the call, which is to sell Activator 1000.

19.     The initial robocall message consumers received is a crucial part of the Defendants' telemarketing sales campaign.  Consumers who heard the message about "free information" and left their contact information then received a telephone call from one of Carbro's telemarketers.  The telemarketer identified himself or herself to the consumer as calling from "Activator 1000" and then attempted to sell the Activator 1000 septic tank cleaning product to the consumer.

20.     Consumers who agreed to purchase Activator 1000 received a second telephone call soon after from a Carbro employee to verify the shipping address and purchase.

21.     The Defendants did not remove telephone numbers listed on the National Do Not Call Registry from their callings lists.

22.     The Defendants continued to call consumers despite the consumers having told the Defendants to stop calling and to place the consumers' telephone number on the Defendants' internal do not call list.

23.     The ESI Defendants also sent letters to consumers with unpaid invoices, one of which stated that ESI will refer the consumer to a "NATIONAL COLLECTION AGENCY" if the consumer does not pay.  Another letter informed consumers that ESI Defendants will refer the unpaid invoice to an attorney.  These statements were false, since the ESI Defendants did not refer consumers to any collection agency or attorney.

24.     The FTC required ESI and Carbro to each testify under oath at an investigational hearing in the summer of 2019 regarding their business practices.

25.     At that hearing, Raymond Carney, testifying on behalf of Carbro, admitted that it would be unlawful for a seller to use prerecorded messages to sell septic products in the United States.  Raymond Carney also testified that he is responsible for ensuring compliance with the National

Do Not Call Registry. Subsequently, Raymond Carney further testified that he knew that Carbro delivered prerecorded messages to United States telephone numbers.

26. At that hearing, Sean Carney admitted that companies hired to market ESI's products have to use the National Do Not Call Registry to "scrub any lists that they have or existing lists that they have monthly before they make calls on our behalf" to ensure that ESI is not causing outbound calls to people who do not want to be called. He also testified that delivering prerecorded messages to consumers in the United States would place his livelihood at risk, demonstrating his knowledge that such a practice would be illegal.

27. ESI-related entities have been operating for years using illegal telemarketing practices.

28. In 2001, Oregon enjoined ESI-related entity DJC Holding Company of New Jersey d/b/a Septic Safety from telemarketing or accepting payment for business obtained through solicitation in Oregon.

29. In 2003, public authorities in Missouri and Wisconsin sued ESI over its use of robocalls and calling consumers who were registered with their respective state's "do not call" registries. ESI stipulated to a consent judgment, signed by Joseph Carney, enjoining it from soliciting Wisconsin consumers whose telephone number appeared on the state do-not-call registry.

30. In 2006, the Federal Communications Commission assessed, with notice to Joseph Carney, a Forfeiture Order against ESI for willful or repeated violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b), for delivering unsolicited, prerecorded messages.

31. In June 2017, the Better Business Bureau ("BBB") placed an alert on ESI's publicly available BBB profile, which remains there today, advising the public that the BBB contacted ESI about a "possible pattern of complaints" related to unordered products, difficulty returning products, and "threats of being turned over to a collection agency." Defendant Joseph Carney

responded to the BBB's alert, but did not address reports of ESI threatening to turn consumers over to a collection agency. Defendant Joseph Carney further responded that Defendant Sean Carney handles BBB complaints.

32. Additionally, since 2013, three private citizens have sued one or more of the Defendants after having received unsolicited robocalls.

33. Based on the facts and violations of law alleged in this Complaint, Plaintiff has reason to believe that the Defendants are violating or are about to violate laws enforced by the FTC because, among other things:

    a. The Defendants engaged in their unlawful activity repeatedly for over a period of at least fifteen years.

    b. The Defendants engaged in their unlawful acts and practices willfully and knowingly.

    c. The Defendants continued their unlawful acts or practices despite knowledge of numerous complaints.

    d. The Defendants continued their unlawful acts or practices despite knowledge of the FTC's investigation and even after they received a Civil Investigative Demand from the FTC.

    e. The Defendants' unlawful acts and practices were the subject of prior law enforcement actions, yet the Defendants continued to engage in such practices.

## VIOLATIONS OF THE FTC ACT

34. Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), prohibits "unfair or deceptive acts or practices in or affecting commerce." Misrepresentations or deceptive omissions of material facts constitute deceptive acts or practices prohibited by Section 5(a) of the FTC Act.

## Count I
## False Representations to Induce Payment
### (against ESI and Joseph and Sean Carney)

35.     In numerous instances, in connection with the sale and collection of payment for septic tank products, including through the means described in Paragraphs 11-32, ESI, Joseph Carney, and Sean Carney have represented, directly or indirectly, expressly or by implication, that failure to pay will result in legal action or collection activities by a collection agency.

36.     In truth and in fact, these representations are false or misleading or are not substantiated at the time the representations are made.

37.     Therefore, the making of the representations set forth in Paragraph 35 constitutes a deceptive act or practice in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

## VIOLATIONS OF THE TELEMARKETING SALES RULE

38.     In 1994, Congress directed the FTC to prescribe rules prohibiting abusive and deceptive telemarketing acts or practices pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101-08.  The FTC adopted the original TSR in 1995, extensively amended it in 2003, and amended certain sections thereafter.  16 C.F.R. pt. 310.

39.     Among other things, the 2003 amendments to the TSR established the National Do Not Call Registry, maintained by the FTC, of consumers who do not wish to receive certain types of telemarketing calls.  Consumers can register their telephone numbers on the Registry without charge either through a toll-free telephone call or over the Internet at donotcall.gov.

40.     Consumers who receive telemarketing calls to their registered numbers can complain of Registry violations the same way they registered, through a toll-free telephone call or over the Internet at donotcall.gov, or by otherwise contacting law enforcement authorities.

41. The FTC allows sellers, telemarketers, and other permitted organizations to access the Registry over the Internet at telemarketing.donotcall.gov, to pay the fee(s) if required, and to download the numbers not to call.

42. Under the TSR, a "telemarketer" means any person who, in connection with telemarketing, initiates or receives telephone calls to or from a customer or donor. 16 C.F.R. § 310.2(ff). A "seller" means any person who, in connection with a telemarketing transaction, provides, offers to provide, or arranges for others to provide goods or services to the customer in exchange for consideration. 16 C.F.R. § 310.2(dd).

43. Under the TSR, an "outbound telephone call" means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution. 16 C.F.R. § 310.2(x).

44. The TSR prohibits sellers and telemarketers from initiating an outbound telephone call to numbers on the National Do Not Call Registry unless the seller (1) has obtained the consumer's express agreement, in writing, to place such calls, or (2) has an established business relationship with that consumer, and the consumer has not stated that he or she does not wish to receive such calls. 16 C.F.R. § 310.4(b)(l)(iii)(B).

45. The TSR prohibits sellers and telemarketers from initiating an outbound telephone call that delivers a prerecorded message, unless the seller has obtained the consumer's express agreement in writing to receive such calls. 16 C.F.R. § 310.4(b)(1)(v). Such express agreement must include: (1) a clear and conspicuous disclosure that the purpose of the agreement is to authorize the seller to place prerecorded calls to such person; (2) that the seller did not require the agreement to be executed as a condition of purchasing a good or service; (3) the specific seller the consumer

is authorizing to make such calls; and (4) the consumer's telephone number and signature.  16 C.F.R. § 310.4(b)(1)(v)(A)(i)-(iv).

46.     Under the TSR, sellers and telemarketers bear the burden of proof to demonstrate they had a legal basis for initiating or causing the initiation of each outbound telephone call dialed to numbers listed on the National Do Not Call Registry and each outbound telephone call that delivered a prerecorded message.  The TSR requires sellers and telemarketers to maintain all records of express agreements for a period of 24 months.  16 C.F.R. § 310.5(a)(5).

47.     The TSR prohibits sellers and telemarketers from initiating an outbound telephone call to a person who previously has stated that he or she does not wish to receive an outbound telephone call made by or on behalf of the seller whose goods or services are being offered.  16 C.F.R. § 310.4(b)(1)(iii)(A).

48.     It is an abusive telemarketing act or practice and a violation of the TSR for a telemarketer making an outbound telephone call to fail to promptly, truthfully, and in a clear and conspicuous manner disclose the identity of the seller, that the purpose of the call is to sell goods or services, and the nature of the services.  16 C.F.R. § 310.4(d).

49.     The TSR prohibits a person from providing substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or telemarketer is engaged in acts or practices that violate Sections 310.3(a), (c) or (d), or 310.4 of the TSR.  16 C.F.R. § 310.3(b).

50.     Pursuant to Section 3(c) of the Telemarketing Act, 15 U.S.C. § 6102(c), and Section 18(d)(3) of the FTC Act, 15 U.S.C. § 57a(d)(3), a violation of the TSR constitutes an unfair or deceptive act or practice in or affecting commerce, in violation of Section 5(a) of the FTC Act, 15 U.S.C. § 45(a).

51.     Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A), as modified by Section 4 of the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended, and as implemented by FTC Rule 1.98(d), 16 C.F.R. § 1.98(d), authorizes this Court to award monetary civil penalties.  Effective January 24, 2017, the Court was authorized to award a penalty of up to $40,654 for each violation of the TSR.  16 C.F.R. § 1.98 (2017).  Effective January 22, 2018, the maximum civil penalty amount was adjusted to $41,484 for each violation of the TSR.  16 C.F.R. § 1.98 (2018).  As of February 14, 2019, the maximum civil penalty amount was adjusted to $42,530 for each violation of the TSR.  16 C.F.R. § 1.98 (2019).  On January 13, 2020, the maximum civil penalty amount was adjusted to $43,280.  16 C.F.R. § 1.98 (2020).  On January 13, 2021, the maximum civil penalty amount was adjusted to $43,792.  16 C.F.R. § 1.98 (2021).  The Defendants' violations of the TSR were committed with the knowledge required by Section 5(m)(1)(A) of the FTC Act, 15 U.S.C. § 45(m)(1)(A).

52.     Each instance in which the Defendants have failed to comply with the TSR, 16 C.F.R. pt. 310, constitutes a separate violation of the TSR for the purpose of assessing monetary civil penalties.

**Count II**
**Violating the National Do Not Call Registry**
**(against all Defendants)**

53.     In numerous instances, in connection with telemarketing, the Defendants have initiated or caused others to initiate an outbound telephone call to a person's telephone number on the National Do Not Call Registry, in violation of the TSR.  16 C.F.R. § 310.4(b)(1)(iii)(B).

**Count III**
**Initiating Unlawful Prerecorded Messages**
**(against all Defendants)**

54.     In numerous instances, in connection with telemarketing, the Defendants have initiated or

caused others to initiate outbound telephone calls that delivered prerecorded messages to induce the purchase of goods or services, in violation of the TSR. 16 C.F.R. § 310.4(b)(1)(v)(A).

## Count IV
## Failing to Honor Do Not Call Requests
### (against all Defendants)

55. In numerous instances, in connection with telemarketing, the Defendants have initiated or caused others to initiate an outbound telephone call to a person who previously has stated that he or she does not wish to receive an outbound call made by or on behalf of the Defendants.

56. Therefore, Defendants' acts or practices as set forth in Paragraph 55 violate the TSR. 16 C.F.R. § 310.4(b)(1)(iii)(A).

## Count V
## Failing to Make Required Oral Disclosures
### (against all Defendants)

57. In numerous instances, in connection with telemarketing, the Defendants have initiated or caused others to initiate an outbound telephone call that failed to disclose truthfully, promptly, and in a clear and conspicuous manner to the person receiving the call (a) the seller's identity and (b) that the purpose of the call is to sell goods and services.

58. Therefore, Defendants' acts or practices as set forth in Paragraph 57 violate the TSR. 16 C.F.R. § 310.4(d)(1) and (2).

## Count VI
### Assisting and Facilitating Abusive Telemarketing Acts and Practices
**(against the ESI Defendants)**

59. In numerous instances, the ESI Defendants have provided substantial assistance or support to Defendant Raymond Carney and Carbro, whom the ESI Defendants knew or consciously avoided knowing were engaged in violations of Section 310.4 of the TSR.

60. Therefore, the ESI Defendants' acts or practices as set forth in Paragraph 59 violate the TSR. 16 C.F.R. § 310.3(b).

## CONSUMER INJURY

61. Consumers have suffered and will continue to suffer substantial injury as a result of the Defendants' violations of the FTC Act and the TSR. In addition, the Defendants have been unjustly enriched as a result of their unlawful acts or practices. Absent injunctive relief by this Court, the Defendants are likely to continue to injure consumers, reap unjust enrichment, and harm the public interest.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff FTC, pursuant to Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b), 57b, and Section 6 of the Telemarketing Act, 15 U.S.C. § 6105, and the Court's own equitable powers, requests that the Court:

A. Enter a permanent injunction to prevent future violations of the FTC Act and the TSR by the Defendants;

B. Award Plaintiff monetary civil penalties against the Defendants for each violation of the TSR alleged in this Complaint; and

C. Award Plaintiff the costs of bringing this action, as well as such other and additional relief as the Court may determine to be just and proper.

Dated:  July 6, 2021

**OF COUNSEL:**

JON MILLER STEIGER
Regional Director
East Central Region

FEDERAL TRADE COMMISSION

Amy C. Hocevar, OH # 0075510
Christian M. Capece, WV # 10717
Derek E. Diaz, OH # 0069755
Fil M. de Banate, OH # 0086039
Federal Trade Commission
1111 Superior Avenue East, Suite 200
Cleveland, Ohio 44114
Tel: (216) 263-3409 (Hocevar)
Tel: (216) 263-3419 (Capece)
Tel: (216) 263-3421 (Diaz)
Tel: (216) 263-3413 (de Banate)
Fax: (216) 263-3426
ahocevar@ftc.gov
ccapece@ftc.gov
ddiaz@ftc.gov
fdebanate@ftc.gov

Respectfully submitted,

**FOR THE UNITED STATES OF AMERICA:**

BRIAN M. BOYNTON
Acting Assistant Attorney General
Civil Division

ARUN G. RAO
Deputy Assistant Attorney General

GUSTAV W. EYLER
Director
Consumer Protection Branch

LISA K. HSIAO
Assistant Director

By: *s/ Zachary L. Cowan*

Zachary L. Cowan
Trial Attorney
Consumer Protection Branch
U.S. Department of Justice
P.O. Box 386
Washington, DC 20044
(202) 598-7566
Zachary.L.Cowan@usdoj.gov